My name is Nate Kellum. I represent the appellant, Christopher Dickinson. North Seattle College deprives Mr. Dickinson of his fundamental right to be heard, banning his speech in an area that has been designated for speech. NSC officials, through their processes, through their application, what they have done is that they have taken his speech in a public forum that has been set aside by the college itself and determined that his speech is disallowed due to the policy of deeming any expressive activity that is disruptive of the learning environment. And in implying this extraordinarily vague policy, what they have determined is that the word disrupt can be anything like a complaint, just basically someone complaining of being disturbed, and that the learning environment can actually include the designated public forum itself, the outdoor courtyard. Well, wasn't the problem was that he was speaking so loud that it disrupted the classroom activities? It didn't disrupt any classroom activities, actually, Your Honor. There wasn't any proof of that in the record. What there was proof of is that somebody went through the courtyard, the outdoor courtyard, which was the designated public forum, and she complained about what she heard, saying that she felt uncomfortable about it. So there's actually no showing of any interference with educational activities, no interference with the classroom, but someone complained about a disruption. And that's really the constitutional issue that we have here because it really violates the Constitution in two respects. One is a freedom to free speech and also a freedom to due process.  I'm looking at the findings of fact of the district court. Yes, Your Honor. It says that Dickinson was told to stop speaking because he was speaking very loudly. Apart from the one student who reported Dickinson to campus security, two administrative employees submitted declarations indicating that they also found him to be disruptively loud despite being on the second floor of a building next to the courtyard. One described his voice as sounding like he was using a bullhorn, and both said the volume startled and disrupted them. They were on the verge of calling security themselves when they saw that security was already approaching them. Two security officers also submitted declarations. One said that he heard Dickinson from outside the courtyard and asked him to lower his voice and then heard Dickinson from inside his office with the door closed, again asking Dickinson to lower his voice, et cetera. So there was substantial evidence, was there not, that as the district court found that he was not only speaking in a very, very loud way but a completely disregarded request that he lower his voice. I don't believe so, Your Honor. Because what that evidence has shown is that really it's the complaints of individuals. And what's significant about it is really the only complaint that triggered the action itself was a person who was in the designated forum itself. They didn't know about the people who were in the second floor. They didn't complain until well after the fact. They didn't complain at the time. And so it's interesting that that had absolutely nothing to do with the fact that he was not. Forgive me. I'm not sure I understand. Certainly, Judge. If you don't complain at the time but then the question is whether it was in fact disruptive, the fact that you were disruptive and you come forward with evidence to that effect later is still relevant to the court's determination, is it not? Oh, I think it could be probative if that was actually the standard. But the standard is whether it's a complaint of disruption. And because as NSC, North Seattle College, has admitted, nothing triggers it objectively. It has to be a complaint. Someone complains about something. So really volume is not an indicator. They don't use decibel levels. They don't try to objectively measure the sound. What they go by is individual complaints. And so they received an individual complaint from a student that went by. And the two individuals, they talked about how it bothered them later. But even with that, that was just their individual complaints. There was no showing of interference with classroom activities, no showing of interference with any type of educational activities. All we have here is a showing that individuals said that they were bothered, they were annoyed. And what the Supreme Court has said, what this court has said time and time again is that's just not a valid standard to stop someone's speech in a designated public forum. A public forum is really just the equivalent of a traditional public forum. If it substantially interferes with educational activities inside or outside of a building, then that's disruptively allowed. The problem is here in the appellate court, we're not in a position to make those sort of factual findings. We've got a court deference to the findings that are made. But let me ask you about the exhaustion issue because there was a window of time within which he could have appealed, and he didn't do that. So what's the consequence of that failure to exhaust? Let me answer that question, Judge. And then, Ryan, if I'd like to address the deference question that you brought up as well. As far as the exhaustion, that doesn't apply with Section 1983 cases, that there is no exhaustion requirement because of that was Patsey v. Regents Board. That's been established by the Supreme Court that when you have a Section 1983 case dealing with constitutional rights, you're not obligated to have to go through a procedural process. All you really need to do is just make your claim, and you do it in federal court because that's the basis on which you make your claim. And then as far as the deference, actually this court is not to defer because this involves free expression. This court in 1997 in the San Antonio Community Hospital case said that when you have a case involving the denial or grant of a preliminary injunction, even though typically that does involve deference, that involves abuse of discretion, not so when it's a claim involving free expression. Because of the weightiness, really, of the issue involved, this court is to really review the record for fresh examination. And reviewing this record for fresh examination, what you find is that all we have here are subjective complaints. There are no objective findings of any interference whatsoever. And actually, that's how the policy works. Director Johnson was very clear about that when he explained it to Mr. Dickinson. You find that in Exhibit F. That's referred to on page 75 in our record excerpts, and that's an audio. And so we don't have to guess as to what was said there because it's all contained on audio. And what Director Johnson tells Mr. Dickinson is that it really doesn't matter what your sound level is because Mr. Dickinson was trying to work with, tell me what my sound level needs to be. He said, it doesn't matter what your decibel level is because you cannot speak aloud. And this was very confusing to him because he told him he was there to preach, he was there to deliver a speech, and then he was told he could not do that. He said the only thing he could do was to speak with individuals one-on-one, conversationally.  He could not deliver a speech. Director Johnson told him that he could not preach, and Director Johnson told him specifically that he could not speak loud enough to be heard. And that's really striking. When you have a designated public forum, the equivalent of a traditional public forum, where you tell a speaker he cannot speak loud enough to be heard. And what we have here is the only legitimate interest they could have is excessive noise. And that would be legitimate. But their standard really does not address it because it just includes way too much speech that would not be excessive because it's all tied to complaints and it's not tied to an objective finding that is actually excessive because that's not really part of what they're looking for. Because, again, what they look for is there a disruption. Now, disruption, I think, in the ordinary sense, could involve what I think you mentioned, Judge Rakoff, and that would be a teacher saying, hey, I'm trying to teach a lesson here, and we really can't do it because of the noise outside. That didn't happen here. It's really someone going in a forum itself. Well, it seems to me that that's really a point of dispute, right, what's disruptively loud when the student complained and when you've got evidence in the record from a couple of administrative employees saying it's disruptively loud. We're only at the preliminary injunction stage. Let me ask you as a practical matter, because he had sent the school a letter indicating that he'd like to get back to the campus as soon as possible, but was there any agreement to stop being disruptively loud? Right, and that really is the rub of the matter, and that really is why it is very appropriate for this court to consider it at this time, Judge, and that is because what they're telling him is that he cannot preach, he cannot speak, so as to justify a complaint. So there is no objective level in which he can go. He doesn't have a decibel level. He doesn't say, okay, you have to speak in a certain way, but what they're telling him is that you can't do it so as to trigger a complaint. Well, what I think Judge Wynn is partly asking is it appears in the record in this case that he has been banned indefinitely, but there are some indications of a more informal nature that the college was holding out some possibility of return, but it's sort of vague, and has any kind of formal arrangement been offered to you? There was a letter actually sent this past week. Now, up to this past week, the condition was that he'd have to show good cause for violating the policy, and so short of that, he wouldn't be able to come back. But then this week, it was a letter sent saying that he could come back, but then again, the catch was that you cannot violate their disruption policy. You haven't accepted that, though, right? So there's no contractual agreement. No, there's no contractual agreement, and really, for Mr. Dixon's purposes, well, that's better than what he had because before he couldn't hand out ledger, he couldn't talk to people. For him, preaching is really paramount to his communication, and the reason why that works for him is because in the context, he really doesn't know anybody when he's going to these campuses. So what he tries to do to generate interest is he tries to speak aloud. So they just start speaking. People hear what he's saying. Some are interested. Some are not. And then those that are, they engage with him in discussions and questions, maybe some debate, but that gets them talking. And so, really, without the ability to preach, it really deprives him an opportunity to speak. And so that's why, in addition to not really being a nearly tailored measure in any respect, because it bans his speech and also you have the extraordinary discretion involved here, is that it deprives him of viable alternatives in which to communicate his message. And I think a case that really isn't very instructive here is a U.S. Supreme Court case in Asseo v. State of New York. It's a 1948 Supreme Court decision. And why I think that's important is because the facts really track what has happened here, where you had a chief of police who granted permission to a preacher to preach in a public forum, but there were complaints about his preaching. Complaints didn't really relate to content. They really related to sound. But what about granted, which seems even more closely in point, where the ordinance was that it was improper to make, quote, any noise or diversion which disturbs or tends to disturb the peace or good order of a school session or a class, and that was held constitutional. It was. And I think if that language was used here, I think it would be upheld constitutional as well. But the problem is that's not their standard. That's not what they use. It's not a matter of disturbing, actually having an actual disturbance of a class or some type of school setting. All it requires is somebody to complain. And so that's really the difference between granted and this situation, is that here it's in the ears of the beholder. And as said in SAIA, annoyance at ideas can be cloaked in annoyance at sound. And that's why in SAIA they held that's unconstitutional. You cannot allow just a complaint about, hey, that's bothering me, that's annoying to me to be a sufficient reason for stopping speech. And yet that's what triggers it here, and that's what the policy is. That's what happened to him on October 3, 2016, Your Honor. And the problem is that's what will continue unless this Court is able to intervene. And if allowed, I'll reserve the rest of my time for rebuttal, but I'll be glad to answer any questions that you might have. All right, thank you. All right, thank you. Good morning, and may it please the Court. I'm Derek Edwards, the Assistant Attorney General, representing Appellees Warren Brown and Daryl Dickinson. North Seattle College welcomes non-students to come onto campus. The only requirement is that they not be disruptive, substantially disruptive, or substantially interfering. Right now, I mean, of course, I am shocked that anyone would speak in a loud voice. That would never happen in New York. But I understand the present state of the record. This gentleman has been banned indefinitely. Where do you get the power to do that? The worst thing he did was speak a little too loudly. Well, he spoke very loudly for 30 minutes. He was told three times, four times to go ahead and lower his voice. He wouldn't do it. According to the tape recording, they are. So you think you have the power then with no indication of prior recidivism or anything like that? You have the power to say you're banned for life from our public area of our college campus? This circuit in Souders said that the colleges have the right to protect themselves. And in that case, it was an indefinite suspension from Oregon State University. In this case, the indefinite suspension is tailored to Mr. Dickinson's refusal to abide by the college's reasonable rules to go ahead and stop disrupting classes. He's made it clear. His posture throughout this entire proceeding is he has a right, he believes, to go ahead and preach so loudly as to disrupt classes. And until he changes his position in that regard, it's reasonable to go ahead and require that he not come back onto campus. If he changes his mind and says, okay, I can take your reasonable options that you've offered to me to speak one-on-one, to go ahead and lower my voice, to pamphlet like everybody else that comes onto campus, then there's no reason for him to remain off campus. It's not a lifetime ban. Presently, you've told him you're out, period. And you've also said, don't tell us that you had some objections, you've exhausted, you were much too late. So what reason does he have to believe that he can come back if he speaks in a more moderate tone? Well, the first point is that the trespass rule that we used, the neutral trespass rule that we used in this particular case, did have a duration provision in it. Mr. Dickinson could have appealed that trespass notice. What's the duration that's stated in the trespass letter? Wasn't it silent as the duration of the ban? It was, Your Honor, and that doesn't make it unconstitutional. Well, doesn't it violate the actual language of the code itself? The statute itself seems to contemplate revocation temporarily or for a stated period of time. So I'm bothered by the same issues that Judge Rakoff was really raising, in that the record that we have doesn't suggest any particular period of time. Now, I heard today counsel from Mr. Dickinson clarifying that there's been some communications which have not made it into the record before the court. I suspect they're not in the record below because of the recency of the events, but that the college has attempted to clarify the terms of the revocation either to, well, you tell me, to clarify is it the limit of duration or is it conditions upon which he can return, because those things aren't in the record right now. And, Your Honor, it's not in the record, and it's difficult to get it into the record at this late stage, but the college has lifted the trespass notice with the admonition that Mr. Dickinson must abide by the rules if he comes back onto campus and not yell or shout for an extended period of time. Getting back to your question on it not being in the rule, the trespass rule, he could have exhausted his administrative remedies, he could have gone up to the Superior Court under the Administrative Procedures Act, and if he had challenged that rule promptly within five days, surely the college would have gone ahead and said, you're right, you know, this rule says that you're supposed to have a duration here, and it could have said something as simple as, you're trespassed until such time as you agree to abide by our rules. I think that would have clarified it, that would have been appropriate. But you're not prepared today to put a time duration on this ban, correct? Today he's been, as I mentioned, he's allowed to come back onto campus, so it's been lifted. But it would be really difficult to find it. It's been unconditionally lifted, you're saying? He can come back to campus, and then if he's deemed to be disruptively loud again, then he's going to be asked to leave again? Or has it been lifted conditionally so long as he agrees not to be disruptive? Well, he's allowed to come back on as long as he agrees to abide by the college's rules. So that's unconditionally. If he violates the college's rules by shouting and yelling, then he likely will be asked to go ahead and tone it down again, and if he can't do that, then he will be trespassed again. We have a problem in that it's hard to go ahead and come up with a time limit to trespass somebody. He doesn't believe that he has to agree with our rules. So what do we do, give him a six-month trespass notice, a year? He'll come back on again at that period of time and say, well, my time is up. I still don't agree with your rules. You know, everyday criminal actions, someone uses a drug that they think they have a right to use, the law says they can't, so they go to jail, and at the end of that time, they're a free person and they can do what they want. If they choose to commit a new crime, that's their choice. But that's not your situation. Your situation is, oh, my gosh, you spoke so loudly, there was even someone who complained about it, and so you're out of here forever unless you affirmatively say that you will not speak too loudly, although we're not yet defining in terms of decibels or any other measure exactly what too loudly is. Well, a couple of points there. First, Widmar specifically said that colleges can ban those who refuse to abide by the college's reasonable rules, even if for First Amendment purposes. That's a specific quote out of Widmar. It comes out of Healy as well. The second point is that Daryl Johnson had never had to go ahead and trespass anybody for First Amendment issues before in four years of his tenure there. He could hear them from 150 feet away through a closed door, told them four times to quiet down, told them to leave three times. The two witnesses, remarkably, after eight months between the time of the incident and when they filed the complaint, were able to go ahead and hear them. It sounded like a bullhorn. They'd never heard anyone that loud before. This was not an isolated incident that happened arbitrarily. And getting back to counsel's point, Laurie Widdish and Starr Conrad simply said that classes were in session, there were classrooms above them, there were classrooms across the way. Under Tinker and Granite, you don't need to wait for people to file complaints. So if he agrees to, I will abide by your rules, and specifically, I will not speak too loudly, how do you define too loudly? Well, we go to Ward, and we go to Tinker, and we go to Granite, and all of those cases said that you don't need to prescribe with precision the decibels, that you're going to go ahead and be too loud. We know in Ward that the neighbors around Central Park said the rock music was too loud, and so they had to use the city's acoustics in order to go ahead and lower the voice, even though people couldn't hear the message. That's very similar to this case. He wants to, Mr. Dickinson wants to preach loudly. He wants to go ahead and reach everybody he can, but he can't do that in that particular venue. There might be other venues that would be great for that, but this college is very condensed. He's surrounded by three buildings, a library, two buildings around the way. We'd love to have an open space like the University of Washington or someplace where you go to Red Square, but we don't have that here. So if somebody wants to speak that loudly, it's just not an appropriate venue for that. Well, what if he says, I'll come back on campus and I'll speak loud enough to be heard but not to be disruptive? You know, there has to be some judgment for school officials. We heard from Tinker that school officials need to be able to reasonably forecast disruption. Disruption and substantial interference are the Tinker and Healy standards that apply to colleges and universities and schools. But the discretion under the First Amendment has to be used with great caution or it can easily just become a device to ban someone whose speech you don't like. That's true. But the Supreme Court in Widmar has said that schools and universities are different than parks and sidewalks. Yeah, they have a lot more rock music, usually. Yeah, and we need the flexibility, too. I mean, you saw that in Bethel, the school district, that we can't anticipate all the disruptions and things that happen at schools. There's a plethora of things. So with great restraint, they trespassed Mr. Dickinson. The college was quite – Yeah, but I want to draw a distinction between the prior trespass and let's say we're with you there, that the court didn't abuse its discretion in denying the preliminary injunction. I want to talk about what goes forward from here because under the terms of the statute that you're relying on, it contemplates some definite duration. And so now you're saying you're trying to work that out, and what you're offering to Mr. Dickinson is come back, but only if you tell us you're going to comply with the rules. Well, it seems to me he's saying, I intend to comply with the rules. I will behave reasonably and not be disruptively loud. So your response, I take it, is, well, we're not satisfied with that because what he deems to be non-disruptively loud to us is disruptively loud, kind of relying what happened in the past. It just seems to me that it's a situation where you can sit down and work it out, set a duration, have him come back, see if he violates the ban again. Well, I think that would be appropriate. And you're right, the rule does say that there should be a duration stated. As I said, that's a state law substantive issue, not a constitutional issue, which is an issue here. But the first time around was cooled off, come back again. It's indefinite. If he ever came back and said, you know, I'd like to go ahead and come back on, I won't be as loud as I was before, he's never done that. And the college finally has lifted it. But if he comes back on and does it again, then what's the college's recourse? You know, it has a right to be able to protect itself. Is it not true that if there had been a duration, let's say a year, he would then have had the constitutional right to come back on without making any kind of agreement in advance? If he then violated the rules again, you could kick him off. But he is not required, if there was a duration, to give some sort of advance consent to your rules or whatever. True? So you're not offering him the same thing that should have been offered if you had had a specific duration. I think we are. I think the college has basically said that you're allowed to come back in again, but you must abide by our rules. I thought you said he has to state in advance his agreement to that. No, no. He just has to go ahead and the trespass notice has been lifted. But if he violates the rules again, he's going to get trespassed again. The trespass has been lifted? Is there a formal document to that? That's the letter that was referenced by Mr. Kellum that went out last week that the college has lifted it, advised Mr. Dickinson that he needs to go ahead and comply with our disruption and interference rules, and if he doesn't, he's going to get trespassed again. I think that's what we're trying to clarify. Maybe we ought to send this back for the latest offer to be put into the record. And I was focusing on the rule because if the trespass letter that has an indefinite duration stated that it's in violation of the state rule that the college agrees it's got to abide by, we may not have to reach the potentially thornier constitutional issues. Not the appropriate, Your Honor. That's not what Mr. Kellum is asking for, though. He wants an injunction saying that our rules are unconstitutional as applied to Mr. Dickinson. And getting back to your case as well, Judge Rakoff, is the, you know, the insiders and Albertini, there are many cases where people have been barred from a forum for their activities. And once they are, you know. All, as I read them, much more extreme in this situation. Yes, there are. There's a case called Virginia v. Hicks, a Supreme Court case where Justice Scalia said that, you know, if you'd been banned from a park for vandalism, you can't come back onto campus again just to go ahead and join a protest. You know, so. And even in Albertini, it was $100 worth of damage, pouring some blood over somebody's documents. And the court nonetheless upheld the nine-year. You don't think there's a major difference between penalizing an act of vandalism and just penalizing exercising your free speech rights in a too loud voice? I think that they're both forms of protest. They're unprotected speech. He was protesting the military, and he did so by damaging documents. And we have the same thing here. He was speaking out too loud of a volume, which is unprotected speech in this particular forum. It wasn't based upon the content of his speech or his viewpoint. All right. Your time's up, so unless my colleagues have any additional questions. Thank you. Thank you, counsel. Thank you. Allow me to just make clear, and it's shown in the record, it's in Exhibit F, it's the audio, that Mr. Dickinson said, I want to preach, but I don't want to violate any rule that is too loud. You just tell me what level I need to be. I want to preach but not be too loud. But he was not given that option. He was saying, no, you can hand out literature, you can talk to people conversationally one-on-one, but you cannot preach. And the arbitrary thing about that is that they allow speeches in that area. That is the one. In a position they seem maybe to be taking, and we may need to clarify this, but if they've said the trespass is now over and he can come back, your case is moved, right? I don't believe so. There is several aspects to it. I mean, one as far as like the injunctive relief, part of it certainly was the ban, and there's no question. If they lift a ban, then preliminary injunctive relief regarding that has been lifted. But the process itself, the very fact that they are able to apply a punishment with no duration whatsoever, that ought to be enjoined, and it ought to be enjoined by this court where it has the opportunity to do that. It's before the court, and we respectfully request that that be enjoined, as well as the policy that really doesn't give Mr. Dickinson any guidance as to what is too loud. Thank you. All right, thank you very much, counsel. The matter is submitted for decision by this court.
judges: Fernandez, Nguyen, Rakoff